Mr. Justice Cox
delivered the opinion of the court.
There are three or perhaps four acts—one of Congress and the others of the city of Washington—which I think necessary to consider in connection with this case.
One is the act of Congress of 1848, which is repeated in the revision of the laws of the District, and the others are the acts of the city of Washington of 1856, 1862, and, perhaps, 1864.
At first examination it would seem that there is a conflict between the act of Congress of 1848, and the act of 1862 *349 of the city of Washington on the one hand, and the act of the city of Washington of 1856 on the other. The act of Congress provides that “no open space, public reservation, or other public ground in the city of Washington, nor any portion of the public streets or avenues in said city, shall be occupied by any private person, or for any private purpose whatever.”
That is substantially repeated in the act of 1862 : “ No open space, public reservation, street, or any public grounds in this city, shall be occupied by any private person, or for any private purpose whatever, under a penalty of not more than fifty dollars nor less than twenty-five dollars per day for every day or part of a day any such place shall be so occupied.
On the other hand, the act of the city of Washington of 1856, declares that: “ It shall not be lawful for any person or persons to place or cause to be placed, or allow to remain, any goods, wares or merchandise, or any sign, box, barrel, or other obstruction, on either the footways of any street or avenue further than four feet from the building line,” &c. It gives an implied license to occupy a portion of the sidewalk with obstructions at least within four feet of the building line, and if the subject-matter were the same, there would be a direct conflict between this act of 1856 and the act of Congress of 1848.
This act of 1856 also permits builders, while engaged in the construction of a house, to occupy a portion of the sidewalk and street with building materials ; so that there is an apparent conflict between this act of 1856 and the act of Congress of 1848, containing this general prohibition.
Now, it is sought to reconcile them by interpreting the act of Congress as applicable merely to carriageways, and the ordinance of Washington as applicable to sidewalks. The suggestion is quite a plausible one, but it fails wholly to reconcile this act of Congress with the act of 1856, which, in express terms, allows the carriageways to be taken and occupied in part by builders with building material, and to auctioneers when displaying their goods for sale in front of *350 their places of business. So that there is still an apparent conflict between the two acts.
There is another consideration to be weighed in this connection. In contemplation of law, the street includes the whole space between the building lines, and the title to the sti’eets is vested in the United States. The act of Congress of 1848 is an act of legislation for the protection of this public highway, which is the property of the United States, and the attempt to reconcile this act of Congress by the interpretation of which I have spoken, leads us to the conclusion that Congress, in legislating for the protection of the streets, purposely omitted to protect the footways and sidewalks, leaving them open to the unrestricted occupation of anybody who chose to avail themselves of that privilege. It is difficult to conceive that Congress, by an act of prohibition of this kind, would simply protect the carriageways from encroachment, and at the same time leave it open to anybody to occupy and use the travelled sidewalks. I do not think, therefore, that this mode of reconciling these acts is to be adopted, and it seems to me that they can be reconciled by interpreting them to apply to different subjects. The act of Congress and the act of 1862 of Washington apply to occupation of the street or parts of it; and the act of 1856 of Washington applies to obstructions in the streets. Now, these are not convertible terms. Occupation to be sure is an obstruction, but an obstruction may not always be an occupation. For example, in the act of 1856 there is an implied license to persons to place goods, wares and merchandise on the footways of a street within four feet from the building line, and we can well understand that as a license to business men to have space to display their goods in front of their places of business, and this would constitute an obstruction, a licensed obstruction; but if anybody should undertake, under authority of that implied license, to extend his building out four feet from the building line, it would be obviously something more than an obstruction ; it would be an occupation of a portion of the street. So, too, if he should build a new house in connection with his building *351 that rested permanently within the four feet from the building line, it would be an occupation within the prohibition of the act of Congress of 1848, and the act of Washington of 1862; and it makes no difference, in my j udgment, whether it is a new building connected with an old one, or a separate and distinct one. Anything in the shape of an obstruction which is intended to remain permanently upon a part of the street, and to be used by the owner exclusively for his own private purpose, comes within the description of an occupation which is inhibited by the act of Congress and the ordinance of 1862.
It is obvious that there is a broad distinction between transgressions of that act, of the kind which I have described, and the mere temporary use of the sidewalk by business men in the transaction of their legitimate business, in the display of their goods, wares and merchandise in front of their stores. There is obviously a broad line of distinction between the two classes of cases. The goods are put upon the street temporarily, and intended for removal ; that is a licensed obstruction under the act of 1856. But to erect any kind of a structure, a booth, addition to a house, &c., and to occupy a part of the street the whole time, and to be under the exclusive control and in the use in that way of the owner of the adjoining building, or a stranger holding under his license, anything of that kind I deem to be an occupation of the street within the prohibition of the act of Congress and of the ordinance of Washington of 1862.
The ordinance of 1864 is supposed to have repealed that of 1862. I do not look upon it in that light exactly. It is intended to have more scope than the act of 1862. I think that act was intended to be more comprehensive than the act of 1862, and applies to obstructions proper. The act of 1862 does not make it a condition before proceeding against a party that there shall be notice, but the act of 1864 makes it the duty of the justice to give notice to the party to remove an obstruction, and upon his failure, then to entertain suit against him for penalty for not doing it. I am not prepared to say that an obstruction might not also be an occu *352 pation. I think it may often. What under ordinary circumstances would- be a temporary obstruction would, if allowed to remain and occupy a part of the street, become an occupation of it. The terms are not convertible. They are two different things, and in my judgment a permanent occupation by any sort of structure, a booth, a building, or what not, if it rests permanently on the street, and is under the exclusive use of the owner, is an occupation within the prohibition of the law. With my understanding of the nature of the case of Monroe, judgment must be against him.